UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RON NOLLNER and BEVERLY NOLLNER, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:14-cv-1065 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| SOUTHERN BAPTIST CONVENTION, | ) | |
| INC.; THE INTERNATIONAL MISSION | ) | |
| BOARD OF THE SOUTHERN BAPTIST | ) | |
| CONVENTION, INC.; and GLOBAL | ) | |
| ENTERPRISE SERVICES, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Pending before the court are several motions. Defendants the International Mission Board of the Southern Baptist Convention, Inc. ("IMB") and Global Enterprise Services, LLC ("GES") (together, the "defendants") have filed a Motion to Dismiss (Docket No. 4). As an alternative to dismissal, the defendants request that the court transfer this action to the United States District Court for the Eastern District of Virginia. The plaintiffs, Ron and Beverly Nollner, have filed a Response in opposition to the defendants' Motion (Docket No. 15), to which the defendants have filed a Reply (Docket No. 22). The plaintiffs have also filed a Motion to Amend/Correct the Complaint (Docket No. 23), to which the defendants have filed a Response in Opposition (Docket No. 27). Also pending before the court is the plaintiffs' Motion for Leave to File a Supplemental Response to the defendants' Motion to Dismiss (Docket No. 25), which the defendants have opposed (Docket No. 26).

1

For the reasons stated herein, the plaintiffs' Motion for Leave to File a Supplemental Response will be granted, the plaintiffs' Motion to Amend will be denied, and the defendants' Motion to Dismiss will be granted without prejudice.

## BACKGROUND

### I. Procedural History

The plaintiffs' claims against IMB and GES have a lengthy history, which have been described in part by this court in a Memorandum issued in a previous action, familiarity with which is assumed. *See Nollner v. S. Baptist Convention, Inc., et al.*, 852 F. Supp.2d 986 (M.D. Tenn. 2012). The court will briefly summarize the history of the action for purposes of context.

The plaintiffs first filed suit against the Southern Baptist Convention, Inc. ("SBC"), IMB, and GES[1] in Tennessee state court on October 20, 2011, asserting Tennessee state law claims for breach of contract, promissory estoppel, and retaliatory discharge. (Case No. 3:12-cv-0040 (M.D. Tenn.), Docket No. 1, Ex. A.) They amended their pleadings on December 9, 2011, adding a claim for retaliatory discharge under a federal statute, the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), 15 U.S.C. § 78u-6. (*Id.*, Docket No. 1, Ex. B.) On January 6, 2012, IMB removed the action to this court on the ground that the court had original federal question jurisdiction over the plaintiffs' DFA claim and supplemental jurisdiction over the state law claims. (*Id.*, Docket No. 1)

On April 3, 2012, this court issued an Order dismissing the plaintiffs' DFA claim and remanding the plaintiffs' state law claims to the Circuit Court for Davidson County, Tennessee. According to the defendants, on September 11, 2012, the action was transferred to the

---

[1] The Nollners allege that GES was their nominal employer (a "dummy" company), and that IMB (a wholly-owned subsidiary of SBC) and SBC jointly employed them.

2

Williamson County Circuit Court after judges in Davidson County recused themselves. (Docket No. 4 at 3.) On October 1, 2012, the plaintiffs filed a Notice of Voluntary Dismissal and the lawsuit was dismissed without prejudice on October 19, 2012. (*Id.*)

On October 18, 2013, the plaintiffs filed the current action in Tennessee state court in Davidson County against IMB, GES, and SBC. The original Complaint appears to be very similar to the plaintiffs' pleading in their prior action, with the exception of the elision of the plaintiffs' DFA claim. (*Compare* Docket No. 1, Ex. A *with* Case No. 3:12-cv-0040, Docket No. 1, Ex. B.) The case was subsequently transferred to Judge Easter of the Williamson County Circuit Court. (Docket No. 1, Ex. D.) On January 17, 2014, SBC filed a motion to dismiss on the ground that the plaintiffs failed to sufficiently allege that SBC was an employer of the plaintiffs, a motion that the state court granted on April 23, 2014. (Docket No. 1, Ex. D; Docket No. 4 at 4.) According to the defendants, IMB and GES also filed a motion to dismiss with the state court, which was still pending at the time of removal.

On April 25, 2014, on the ground of diversity, the defendants removed the action to this court. (Docket No. 1.) On April 29, 2014, the defendants filed the pending Motion to Dismiss. (Docket No. 4.) The plaintiffs opposed the motion on June 13, 2014 (Docket No. 15), and the defendants filed a Reply in support of their motion on June 19, 2014 (Docket No. 19). On June 27, 2014, the plaintiffs filed a Motion to Amend or Correct their Complaint, which the defendants opposed on July 8, 2014. (Docket Nos. 23, 27.) Subsequently, the plaintiffs filed a Motion for Leave to File a Supplemental Response to the defendants' Motion to Dismiss, with the proposed additional briefing attached. (Docket No. 25.) The defendants filed a Response in opposition to the plaintiffs' Motion, which addressed the substantive legal arguments raised by the plaintiffs' proposed Supplemental Response (but failed to address why the court should deny

3

the plaintiffs' Motion for Leave).  (Docket No. 26.)  As an initial matter, the plaintiffs' Motion for Leave to File a Supplemental Response will be granted, as the legal issues addressed by both the plaintiffs' Supplemental Response and the defendants' opposition thereto are potentially relevant to the court's analysis of the viability of the plaintiffs' claims and, consequently, the merits of the defendants' Motion to Dismiss.

## II.     Allegations of the Complaint[2]

The facts underlying this suit were discussed at length in the court's April 3, 2012 Memorandum issued in the plaintiffs' previous action before this court.  852 F. Supp.2d at 986. The court incorporates these facts by reference into its analysis and outlines the facts relevant to the pending motions below.  852 F. Supp.2d 986 (M.D. Tenn. 2012).

The Nollners are Tennessee residents who are devoted members of the Southern Baptist community.  In May 2008, Doug Floyd, an employee of defendant IMB, sent a letter to the Nollners enclosing a job description for a proposed missionary assignment located in India.  The job description stated:

> The person filling this job will be managing the construction of a new office building being planned in New Delhi.  The proposed building will include a basement and 4 floors above ground. You will be working with local Indian companies, assisting in obtaining permits for construction, and ensuring engineering standards are followed during construction.

---

[2] Unless otherwise indicated, the facts have been drawn from the plaintiffs' Complaint and the documents attached thereto and referenced therein.  A court deciding a Rule 12 motion may, without converting the motion into a Rule 56 motion, consider (1) documents that a defendant attaches to a motion to dismiss, if they are referred to in the plaintiff's complaint and are central to her claim; and (2) documents that constitute public records or are otherwise appropriate for the taking of judicial notice.  *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

(Docket No. 6, Ex. A.)  IMB also sent the Nollners a letter setting forth the parameters of their employment (the "Employment Letter").  The letter stated:

> Please note that your assignment will not be finalized until we receive your signed "Acknowledgement of Willingness" document and it has been approved and signed by an authorized official of IMB.
>
> . . . .
>
> Once approved for service, your relationship to the IMB will be that of an "at will" employee of a Virginia religious, non-profit corporation, with all aspects of that relationship originating in Virginia and controlled by Virginia law and applicable First Amendment law, including the "ministerial exception."

(Docket No. 6, Ex. B.)  The Nollners accepted the job position and indicated their acceptance by signing an acknowledgement on May 11, 2008 (the "Acknowledgment").  (*Id.*)

When the Nollners arrived in New Delhi, the situation was different than what had been promised by IMB.  The planning phase of the construction project had already been completed, and the defendants did not allow Mr. Nollner to meet with the architect or contractor of the project until months after his arrival.  Over a period of several months, Mr. Nollner became aware of troubling information about the project that he was managing, including, *inter alia*, unsafe workmanship and materials, suspicious activities related to project-related invoices and payments, bribery of Indian officials by the contractor and architects, and an illegal or improper permit issued by the Indian government and signed by an agent of the defendants related to the building's intended use.  Mr. Nollner reported these practices to his supervisors multiple times, but they ignored his entreaties.

On or about October 21, 2010, two of Mr. Nollner's superiors, Tom Allinder and Randy Pegues, asked him to resign his position in India.  After Mr. Nollner refused to resign, the defendants terminated the Nollners' employment on or about October 23, 2010.

5

The Nollners allege a variety of claims under Tennessee law related to Mr. Nollner's discharge against IMB and GES, including (1) common law retaliatory discharge; (2) in the alternative or in addition to their common law claim, retaliatory discharge from employment in violation of the Tennessee Public Protection Act, T.C.A. § 50-1-304 ("TPPA"); (3) breach of contract; and (4) promissory estoppel. The Nollners seek monetary damages, including back pay, front pay, and actual, compensatory, and punitive damages. (Docket No. 1, Ex. A.)

## ANALYSIS

Where there are both a dispositive motion and a motion to amend the complaint pending, the court must first address the motion to amend the complaint. *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988).

I. **Motion to Amend**

   A. **Standard**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court stated:

> Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent

with the spirit of the Federal Rules.

*Id*. at 182 (internal citations omitted). Thus, leave should be given unless there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the non-moving party, or futility of the proposed amendment. *Id*.; *see also Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-82 (6th Cir. 1993); *see Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *see also Kottmyer v. Maas*, 436 F.3d 684, 691-92 (6th Cir. 2006).

### B. The Plaintiffs' Motion to Amend

The plaintiffs have moved to amend their Complaint because (1) they retained new counsel, and (2) they seek to add SBC, an original defendant that was dismissed without prejudice by the state court, back into the case as a defendant because they assert that SBC is a "necessary and indispensable party to this action." Upon comparison of the proposed amendment and the operative Complaint, there are few changes to the pleadings besides the addition of SBC as a defendant. Primarily, the plaintiffs have re-worded and added a handful of vague allegations regarding SBC and its relationship with IMB and GES.

The plaintiffs admit that the addition of SBC, a Tennessee resident, would destroy diversity and, consequently, the subject matter jurisdiction of this court. Accordingly, if the court grants the plaintiffs' Motion to Amend, the court must remand the action to an appropriate state court. The plaintiffs contend that, "although previous actions have been filed" by the plaintiffs, "this is a first amendment of this Complaint and Plaintiffs assert that amendment is necessary to serve the ends of justice and would not be futile." (Docket No. 23.)

The defendants contend that the court should deny the plaintiffs' motion to amend as futile because the plaintiffs' proposed Amended Complaint fails to state a claim upon which relief can be granted. Specifically, the defendants argue that the Nollners' employment contract with IMB expressly states that it is governed by Virginia law, and the Nollners' proposed Amended Complaint (as well as their original Complaint) fails to state any claims under Virginia law. Accordingly, the defendants argue, the plaintiffs' proposed amended complaint would not survive a motion to dismiss and is futile.

Upon thorough review of the plaintiffs' prior action against these parties, the parties' submissions, and the plaintiffs' proposed Amended Complaint, the court agrees with the position of the defendants.

1. Futility

The defendants vigorously contend that the court should deny the plaintiffs' Motion to Amend as futile because the Nollners have failed to plead claims under Virginia law. The defendants' argument as to futility precisely parallels a primary argument in their Rule 12(b)(6) motion.

As with the pending motion to dismiss, a threshold question is whether Tennessee or Virginia law governs the Nollners' employment relationship with the defendants. The parties appear to agree that the Nollners' relationship with IMB and GES is governed by an employment contract, specifically, the Employment Letter signed by IMB and its attached Acknowledgment, signed and returned to IMB by the plaintiffs. Because the Employment Letter expressly states that the plaintiffs' employment relationship with IMB is governed by Virginia law, the defendants argue that any common law claims related to the plaintiffs' employment should be pleaded as Virginia state law claims. Confusingly, the plaintiffs do not dispute the legitimacy of

8

the choice of law provision in the contract; instead, the plaintiffs erroneously hang their hat on the doctrine of *lex loci contractus* and argue that, because the contract was executed by the plaintiffs in Tennessee, Tennessee law governs their claims.

Although the plaintiffs are correct that Tennessee adheres to the rule of *lex loci contractus*, the plaintiffs appear to misunderstand the application of the doctrine. *Lex loci contractus* instructs that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed *absent a contrary intent*." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)). If the parties manifest an intent to instead apply the laws of another jurisdiction, such as by including a choice of law provision in a contract, then that intent will be honored, provided that certain requirements are met. *Id.* "The choice of law provision must be executed in good faith, the chosen jurisdiction must bear a material connection to the transaction, the basis for the jurisdiction must be reasonable and not a sham, and, finally, the choice of the jurisdiction must not be contrary to the fundamental policy of a state having a materially greater interest and whose law would otherwise govern." *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 n.8 (6th Cir. 2006).

Here, the plaintiffs signed an employment contract that stated: "Once approved for service, your relationship to the IMB will be that of an 'at will' employee of a Virginia religious, non-profit corporation, *with all aspects of that relationship originating in Virginia and controlled by Virginia law . . ..*" (Docket No. 6, Ex. B (emphasis added).) Accordingly, the parties entered into a contract containing an unambiguous choice of law provision selecting Virginia law. The plaintiffs do not argue that the choice of law provision should be disregarded;

9

indeed, they appear to completely ignore the existence of the choice of law provision.[3] Accordingly, the court concludes that the choice of law provision included in the plaintiffs' employment agreement with IMB is valid and enforceable and, therefore, the plaintiffs' common law claims filed under Tennessee law related to their employment are deficient as a matter of law.

Because the plaintiffs have failed to plead any claims under Virginia law in their proposed Amended Complaint, the court concludes that the plaintiffs' proposed amendment would not survive a Rule 12(b)(6) Motion to Dismiss.[4] Consequently, the proposed amendment is futile and the plaintiffs' Motion to Amend will be denied.

## II. The Defendants' Motion to Dismiss

### A. Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue

---

[3] The court notes that, despite several prior admonitions from this court, the plaintiffs' counsel has submitted a brief that fails to address (or even acknowledge) several cogent arguments raised by the defendants.

[4] Because the court has concluded that the plaintiffs' proposed amendment would be futile, the court need not reach the defendants' alternative argument that the plaintiffs must survive the rigorous standards set by 28 U.S.C. § 1447(e) in order to re-add SBC as a defendant to the case. However, the court notes that, even had the plaintiffs plead proper claims under Virginia law in their proposed Amended Complaint, the plaintiffs failed to add substantive allegations to their pleadings related to their alleged employment relationship with SBC. The state court dismissed SBC (without prejudice) from the action primarily because the plaintiffs had failed to plead a sufficient employment relationship with SBC. Despite this clear direction from the state court, the plaintiffs' proposed Amended Complaint fails to add substantive allegations of any sort to demonstrate an employment relationship between themselves and SBC. Instead, the plaintiffs ignored the guidance of the state court and rely again in their proposed Amended Complaint on the conclusory allegations of "joint employment" that were rejected by the state court.

In their Motion to Dismiss, the defendants first argue that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(3) for Improper Venue or, in the Alternative, transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). The court notes that, despite the defendants' reference to Fed. R. Civ. P. 12(b)(3), they appear to solely move for dismissal on the basis of the doctrine of *forum non conveniens*. Moreover, the parties appear to agree on the (inaccurate) proposition that the court's discretion under the doctrine of *forum non conveniens* is identical to the court's authority to dismiss an action for improper venue under Rule 12(b)(3) or to transfer venue pursuant to Section 1404(a). This comparison is in error, as a motion to dismiss for improper venue is distinct from a motion to dismiss the claim based upon *forum non conveniens*. As Professors Wright and Miller have explained:

> If venue in a federal civil action is improper, the district court may dismiss or, as is more common, transfer the case to a proper venue under 28 U.S.C. § 1406(a). If venue is proper, but another proper federal district court would be a more convenient forum, the court may order that the case be transferred to that court under 28 U.S.C. § 1404(a). If the superior alternative forum is in a different judicial system—typically, the court of another country—there is no mechanism by which the case may be transferred. Instead, the court may dismiss (or stay) the case under the ancient doctrine of *forum non conveniens.*

Charles A. Wright & Arthur R. Miller, 14D Federal Practice & Procedure § 3828 (4th ed. April 2014).

The court notes that the defendants' argument for dismissal and the plaintiffs' Response in opposition focus nearly entirely on the doctrine of *forum non conveniens*. (Docket No. 5 at 3-7.) Accordingly, the court will presume that the defendants intended to argue for dismissal on the grounds of *forum non conveniens* or, in the alternative, request that the court transfer the action pursuant to Section 1404(a).

    1. <u>Dismissal Based upon the Doctrine of *Forum Non Conveniens*</u>

As an initial matter, the Supreme Court (and the Sixth Circuit) has clearly instructed that the common law doctrine of *forum non conveniens*, since the enactment of Section 1404, applies in federal courts "only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 433, 449 n.2 (1994)); *see also Zions First Nat. Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 n.1 (6th Cir. 2010) ("If another federal district is an alternative forum, dismissal on grounds of *forum non conveniens* is inapplicable and Section 1404(a) applies."). Because the defendants here have urged dismissal or transfer to an alternative federal court within the United States, the court concludes that the common law doctrine of *forum non conveniens* does not apply here. Accordingly, the court will deny the defendants' motion to dismiss or transfer the action on grounds of the common law doctrine of *forum non conveniens*.

2. Transfer Pursuant to Section 1404(a)

Section 1404(a) provides that a district court may transfer a civil action to "any other district or division where it might have been brought or to any district or division to which all parties have consented." As the Supreme Court has instructed, Section 1404(a) was intended to revise, not codify, the common law doctrine of *forum non conveniens*. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253-54 (1981) (noting that district courts were given more discretion to transfer under Section 1404(a) than they had to dismiss on grounds of *forum non conveniens*) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955)). In determining whether to transfer a case pursuant to Section 1404(a), a district court should consider a number of "case specific factors," including the existence of a forum selection clause, as well as "the private interests of the parties,

12

including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (internal citations omitted). The moving party bears the substantial burden of establishing that the factors weigh strongly in favor of transferring venue. *See, e.g.*, *Picker Int'l Inc. v. Travelers Indem. Co.*, 35 F. Supp.2d 570, 573 (N.D. Ohio 1998); *Blane v. Am. Investors Corp.*, 934 F. Supp. 803, 907 (M.D. Tenn. 1996). "Merely shifting the inconvenience from one party to another does not meet Defendant's burden;" to succeed in a motion to transfer pursuant to Section 1404(a), "[t]he movant must show that the forum to which he desires to transfer the litigation is the more convenient one vis a vis the Plaintiff's initial choice." *B.E. Tech., LLC v. Facebook, Inc.*, 957 F. Supp. 2d 926, 930-31 (W.D. Tenn. 2013) (citing *McFadgon v. Fresh Mkt., Inc.*, No. 05-2151, 2005 WL 3879037, at *2 (W.D. Tenn. Oct. 21, 2005) and *Robert Metals, Inc. v. Florida Prop. Marketing Grp., Inc.*, 138 F.R.D. 89, 93 (N.D. Ohio 1991)).

Among the factors that courts consider in a Section 1404(a) analysis are the plaintiff's choice of forum, the convenience of the witnesses and the residence of the parties, the location of sources of proof, including the availability of compulsory process to insure witness attendance, the location of the events giving rise to the dispute, any obstacles to a fair trial, the advantage of having the dispute adjudicated by a local court, and all other considerations of a practical nature that make a trial easy, expeditious, and economical. *See, e.g.*, *Clayton v. Heartland Resources, Inc.*, No. 3:08-cv-0513, 2008 WL 2697430, at *5 (M.D. Tenn. June 30, 2008); *S. Elec. Health Fund v. Bedrock Servs.*, No. 3:02–CV–00309, 2003 WL 24272405, at *5 (M.D. Tenn. July 23, 2003). The court addresses each of these factors individually below.

    i. *Plaintiffs' Choice of Forum*

A plaintiff's choice of forum is generally afforded "great weight," although it is not dispositive. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *see Picker*, 35 F. Supp. 2d at 573; *see also Lewis ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). Here, where no forum selection clause conflicts with the plaintiffs' choice of forum, this factor weighs strongly in favor of Tennessee.

ii. *Convenience of Witnesses and Residence of the Parties*

The convenience of witnesses is also an important factor in the Section 1404(a) analysis. Here, the defendants claim that, with the exception of the plaintiffs, all material witnesses to the action reside in Virginia or Asia and, therefore, the convenience of witnesses favors Virginia. The defendants have identified precisely two witnesses located in Virginia, Randy Pegues and Clyde Meador, and an additional three witnesses who reside "either in Virginia or Asia."

The plaintiffs contend that (1) discovery is required to determine exactly how many witnesses are material to this action and where they reside, but that (2) at least four material witnesses reside in Tennessee (in addition to the plaintiffs), and (3) the convenience of witnesses residing outside Tennessee or Virginia otherwise favors the plaintiffs' forum choice because most witnesses are traveling from west of Tennessee and, therefore, Tennessee is a more accessible forum than Virginia. From the information before the court, it appears that there are at least six witnesses in Tennessee and between two and five witnesses working for IMB in Virginia and/or Asia, as well as an unknown number of witnesses scattered across the United States and internationally. Accordingly, the convenience of witnesses favors Tennessee over Virginia to the extent that the number of witnesses located in Tennessee exceeds those located in Virginia.

### iii. *Location of Sources of Proof*

The parties appear to agree that the majority of employment records related to the Nollners' service with IMB are located in Virginia. Although the import of this factor is mitigated in light of technology, including the availability of electronic discovery, to the extent that there may be some minor convenience associated with the existence of the document originals in a district where the case is adjudicated, this factor slightly favors Virginia.

### iv. *Location of Events Giving Rise to Dispute*

With respect to the location of operative events, this factor is neutral. The allegations of the Complaint clearly indicate that the primary events which gave rise to the Nollners' termination took place in New Delhi, India.

### v. *Any Obstacles to a Fair Trial*

The parties do not assert that there are any concerns related to the availability of a fair trial in either venue. Accordingly, this factor is neutral.

### vi. *Advantage of a Local Court*

Because both Virginia and Tennessee residents are parties to this action, the court concludes that both forums possess an interest in the litigation. Moreover, with respect to the defendants' assertion that this action is best suited for a forum that is "most familiar" with Virginia law, the court is confident that federal courts in both Virginia and Tennessee are well suited to applying Virginia law to the plaintiffs' claims. Accordingly, this factor does not favor either forum.

Despite claiming that litigating in Tennessee would place a substantial burden on the defendants, the defendants have failed to demonstrate that the factors strongly indicate that a trial would be easier, more expeditious, or more economical for both parties in Virginia. In light of

these considerations, the court concludes that the defendants have not carried their burden of demonstrating that the factors weigh strongly in favor of a transfer. Accordingly, the interests of justice do not warrant a transfer of venue to the Eastern District of Virginia under Section 1404(a).

### B. Motion to Dismiss for Failure to State a Claim

#### 1. Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

    2. Application

For substantially the same reasons discussed in the section addressing the plaintiffs' Motion to Amend, the defendants' Motion to Dismiss will be granted on the ground that the plaintiffs have failed to state claims upon which relief can be granted.

On May 11, 2008, the plaintiffs signed an employment agreement that included a choice of law provision selecting Virginia law as the governing law for the parties' employment relationship. The operative Complaint includes four common law claims under Tennessee law and no claims asserted under Virginia law. Because Virginia law governs the plaintiffs' common law claims, their Tennessee law claims will be dismissed.[5]

On a final note, the court recognizes that, despite being aware of the defendants' position as to the choice of law provision for nearly three years (and throughout two lawsuits), the plaintiffs have failed to amend their pleadings to include Virginia law claims (even in addition to their Tennessee law claims). Despite this lapse, the court will grant the plaintiffs leave to file an Amended Complaint to address the deficiencies in their pleadings.

## CONCLUSION

For these reasons, the plaintiffs' Motion for Leave to File a Supplemental Response will be granted, the plaintiffs' Motion to Amend will be denied, and the defendants' Motion to Dismiss will be granted. The plaintiffs' claims will be dismissed without prejudice on the ground that the plaintiffs have failed to state a claim upon which relief can be granted. The

---

[5] Because the court will grant the defendants' Motion to Dismiss on these grounds, it need not reach the defendants' additional arguments as to dismissal of the plaintiffs' claims.

plaintiffs will be granted leave to file an Amended Complaint within 15 days of the court's Order.

An appropriate order will enter.

Enter this 30th day of July 2014.

_____
ALETA A. TRAUGER
United States District Judge